IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DOUGLAS K. UHDE

        Petitioner,        OPINION and ORDER

    v.              07-cv-714-bbc

PAM WALLACE, Warden, THOMAS KARLEN,
Deputy Warden, MATTHEW FRANKS, Secretary
of the Department of Corrections, RICK RAEMISCH,
Secretary of the Department of Corrections, S. SALTER,
Security Director, KEN MILBECK, Corrections Unit
Manager, CHERYL WEBSTER, Corrections Unit
Manager, ROBIN BOYD, Corrections Unit Manager,
JERRY SWEENY, Corrections Unit Manager, PATRICK
LYNCH, Corrections Unit Manager, M. KASTEN,
Captain, SEMANKO, Lieutenant, MATTHEW GERBER,
Inmate Complaint Examiner, TOM GOZINSKE,
Corrections Complaint Examiner, ANDERSON,
Segregation Sgt., DORF, Sgt., KACZMAREK,
Segregation Sgt., SEICHTER, Segregation Sgt.,
KRUM, Segregation Sgt., CICHA, Corrections
Officer and TEMPSHI, Corrections Officer,

        Respondents.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

    This is a proposed civil action for declaratory, injunctive and monetary relief, brought

under 42 U.S.C. § 1983.  Petitioner Douglas K. Uhde contends that respondents violated

his Eighth Amendment and Fourteenth Amendment rights by placing him in a three-bed cell without a hearing and punishing him for disobeying that order after a one-sided hearing; violated his First Amendment rights by retaliating against him for refusing to move to a three-bed cell; and violated other federal and state laws.  Petitioner requests leave to proceed in forma pauperis under 28 U.S.C. § 1915.  He has made the initial partial payment required under the statute.

In an order dated January 28, 2008, I dismissed petitioner's original complaint because it did not comply with Fed. R. Civ. P. 8 and I gave petitioner an opportunity to submit a proposed complaint that conforms to the requirements of Rule 8.  Petitioner's new proposed complaint, dkt. #6, satisfies the requirements of Rule 8, so I will now decide whether he can proceed with his complaint in forma pauperis.

In addressing any pro se litigant's complaint, the court must read the allegations of the complaint generously.  Haines v. Kerner, 404 U.S. 519, 521 (1972).  However, if the litigant is a prisoner, the 1996 Prison Litigation Reform Act requires the court to deny leave to proceed if the prisoner has had three or more lawsuits or appeals dismissed for lack of legal merit (except under specific circumstances that do not exist here), or if the prisoner's complaint is legally frivolous, malicious, fails to state a claim upon which relief may be granted or asks for money damages from a defendant who by law cannot be sued for money damages.  28 U.S.C. § 1915(e)(2).

2

Petitioner will be denied leave to proceed in forma pauperis on any of his claims. First, because there is no constitutional right to avoid being double or triple celled, petitioner will be denied leave to proceed on his claims that respondents violated his Eighth Amendment rights by ordering him placed in a cell with two other prisoners.  Second, because placement in triple cells or double segregation cells is not an atypical or significant hardship as compared to the ordinary hardships of prison life, petitioner will be denied leave to proceed on his claim that respondents violated his due process rights by placing him in a triple cell without a hearing and by placing him in double cell segregation after a one-sided hearing.  Third, because petitioner was not engaged in protected activity when he refused to be placed in a three-bed cell, petitioner will be denied leave to proceed on his claim that respondents retaliated against him by double-celling him in segregation.  Fourth, because, under the facts alleged, a rational basis exists for triple celling some inmates while allowing other inmates to remain in double cells, petitioner will be denied leave to proceed on his claim that respondents violated his right to equal protection under the law.  Finally, because petitioner's contention that respondents violated other federal and state laws fails to meet the requirements of Fed. R. Civ. P. 8, he will be denied leave to proceed on those claims as well.

In his complaint, petitioner alleges the following facts.

3

ALLEGATIONS OF FACT

A.  <u>Parties</u>

Petitioner Douglas Uhde is an inmate at the Stanley Correctional Institution in Stanley, Wisconsin.

Respondent Matthew Franks is the former Secretary of the Wisconsin Department of Corrections and respondent Rick Raemisch is the present Secretary of the Wisconsin Department of Corrections.

Respondent Pam Wallace was the warden and respondent S. Salter was a security director at the Stanley Correctional Institution at times relevant to this complaint.

The following respondents are employed at the Stanley Correctional Institution in the following capacities: respondent Thomas Karlen is the deputy warden; respondents Ken Milbeck, Cheryl Webster, Robin Boyd, Jerry Sweeny and Patrick Lynch are corrections unit managers at the Stanley Correctional Institution; respondent M. Kasten is the captain; respondent Semanko is a lieutenant; respondents Anderson, Kaczmarek, Seichter and Krum are segregation sergeants; respondent Dorf is a sergeant; and respondents Cicha and Tempshi are corrections officers  at the Stanley Correctional Institution.

Respondent Matthew Gerber is an inmate complaint examiner and respondent Tom Gozinske is a corrections complaint examiner for the Stanley Correctional Institution.

4

B.  <u>Triple Celling</u>

The Stanley Correctional Institution is a medium and maximum security prison with a rated capacity of 750 inmates.  Originally, the cells were designed for single occupants.  In 2002, the Department of Corrections authorized their use by two occupants and made "double celling" a permanent practice.  This changed Stanley's rated capacity to 1,500 inmates plus 120 inmates or more in its segregation building.  Typically, the segregation cells continue to house a single occupant in each cell.

Each double cell at the Stanley Correctional Institution has an approximate total area of 82.154 square feet with approximately 55.508 square feet of usable living space.  The double cells contain two bunk beds with storage lockers underneath, one desk, one seat, one unenclosed toilet, one sink, two television tables, one shelf, one mirror, a light fixture, plastic crates and a fixed window.  None of the furnishings are moveable.

Currently, the institution is involved in a construction renovation project in order to bring it up to federal and state code.  Renovation requires approximately six weeks for each building and there are five buildings at the institution.  During renovation, inmates are moved out of selected unit wings and dispersed throughout the institution.

On July 10, 2007, prison officials at the Stanley Correctional Institution instituted "triple celling."  On July 13, 2007, the corrections unit supervisors at the institution posted memos on their units explaining that the institution was being renovated and that cells ##

5

1, 2, 13, 14, 25 and 26 on each wing would be converted to three-bed cells and requesting volunteers for triple celling.  The third bed would be a plastic bed placed on the floor of each double cell approximately 18 inches from the toilet and partially obstructing the doorway into the cell.  The memo was approved by respondents Wallace and Salter.  On September 10, 2007, the memo was amended and posted again.

In the several months before the "triple celling" policy began, respondents Wallace, Salter, Milbeck, Boyd, Webster, Sweeny, Lynch and Franks had meetings.

There was no posting to show that the Department of Corrections made a rule change authorizing "triple celling."  Respondents Wallace and Salter gave orders to start forcing inmates into the three-bed cells.

### C.  Petitioner's Discipline and Complaints

On July 10, 2007, petitioner was moved from housing unit 3-B to unit 1-B.  Upon petitioner's arrival onto unit 1-B, respondent Cicha told petitioner that he would be moving into cell #26, a three-bed cell.

Petitioner refused, explaining that he had not volunteered to be placed in a three-bed cell.  Respondent Cicha told plaintiff that if he did not take cell #26 that he would be placed in segregation.  Respondent Cicha contacted respondent Milbeck, who told petitioner he did not have time to discuss the situation and that petitioner would be put in segregation if he

6

did not agree to placement in cell #26.  Petitioner did not agree, so respondent Milbeck asked security to take petitioner to segregation.

Respondents Tempshi and Semanko responded to the call from respondent Milbeck. Respondent Tempshi placed petitioner in handcuffs and took him to a holding cell, where he strip-searched petitioner and removed his personal property.

Respondent Semanko placed petitioner in temporary lockup status and respondent Tempshi placed plaintiff into cell A-14, a single occupant segregation cell.  Thirty minutes later, another inmate was placed in A-14 with petitioner.  At the time, there were other unoccupied segregation cells available.  Petitioner and the other inmate sharing A-14 were required to share a scheduled recreation time in an enclosed recreation area.  Inmates refusing to triple bunk were "double celled" in single-occupant segregation cells even though other segregation cells remained unoccupied.

On July 10, 2007, petitioner was issued a ticket by respondent Cicha, citing violations of Department of Corrections policy and procedure 303.24; Disobeying an Order.  The reason provided for the ticket was "refusing to triple bunk."  On July 23, 2007, petitioner had a hearing on his ticket.  Respondent Kasten conducted the hearing.  Petitioner was found guilty and given 120 days' disciplinary separation in segregation status.  Petitioner appealed this decision; respondent Karlen upheld it on August 21, 2007.

On July 20, 2007, petitioner filed a complaint with respondent Wallace about the

7

triple celling.   Respondent Wallace forwarded the complaint to respondent Gerber. Respondent Gerber's only investigation into the complaint was to contact respondent Milbeck.   On August 6, 2007, respondent Gerber dismissed petitioner's complaint; it was approved by respondent Karlen on August 10, 2007, and appealed by petitioner thereafter. Both respondents Gozinske and Raemisch dismissed petitioner's appeals.   Neither conducted an investigation.   Even though petitioner filed a timely final appeal, respondent Raemisch denied the appeal, saying it was late.

On September 21, 2007, petitioner was released from segregation and placed in a transition program on unit 1-A.  The transition program is a reintegration program that is highly restrictive.  Petitioner was required to participate in the transition program to be able to return to general population.

Petitioner's confinement in segregation and in the reintegration program deprived petitioner of most of his personal property, his ability to work, his ability to attend vocational programs, have contact visitation, use a telephone, watch television, listen to music, read newspapers, associate and eat with other inmates, ability to attend recreation in a congregate setting or play sports or indoor gym and attend religious services.   In addition, petitioner's access to legal resources has been restricted and he has suffered prolonged confinement.

8

OPINION

A. Eighth Amendment Claims

Petitioner contends that respondents violated his Eighth Amendment rights by requiring him to be double celled in segregation.  Moreover, petitioner contends that respondents are likely to order him to be triple celled in the future, also in violation of the Eighth Amendment.  The Eighth Amendment "imposes duties" on prison officials to "provide humane conditions of confinement," Hudson v. Palmer, 468 U.S. 517, 526-27 (1984), and provide for inmates' "basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety." DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 199-200 (1989).

However, the mere practice of placing prisoners in crowded conditions is not unconstitutional in and of itself.  French v. Owens, 777 F.2d 1250, 1252 (7th Cir. 1985). To determine whether prison conditions, including overcrowding, violate the Eighth Amendment, a court must examine the "totality of conditions of confinement." Id.; Rhodes v. Chapman, 452 U.S. 337, 347-48 (1981) (circumstances under which double celling occurred fell short of cruel and unusual punishment).

In Rhodes, the Supreme Court upheld the use of double celling in cells measuring 63 square feet, finding that the practice "did not lead to deprivations of essential food, medical care or sanitation" and did not "increase violence among inmates or create other conditions

9

intolerable for prison confinement." <u>Rhodes</u>, 452 U.S. at 348.  In <u>Smith v. Fairman</u>, 690 F.2d 122, 124-26 (7th Cir. 1982), the court of appeals for the Seventh Circuit found that double celling in cells as small as 55 square feet and "cramped, dimly lit, poorly ventilated, and, occasionally without hot tap water," did not violate  the Eighth Amendment, even though prisoners spent up to 20 hours a day in the cells.  The court reasoned that because the inmates received adequate food and medical care and the sanitary conditions were reasonable, even these harsh conditions did not subject the prisoners to "wanton and unnecessary infliction of pain."  <u>Id.</u> at 125-26.

Overcrowding may violate the Eighth Amendment if it creates a health problem itself or if it is accompanied by other "unsafe and unsanitary conditions."  <u>French v. Owens</u>, 777 F.2d 1250, 1252, 1253 (7th Cir. 1985).  In <u>French</u>, the prison facility involved double cells that resulted in gross available space of 24 square feet a person and net space approximately half that.  The cells were so small that they had no space for a chair and inmates on top bunks could not sit up in their bunks.  <u>Id.</u> at 1252.  Thus, one of the results of the double celling itself was that, after spending up to 23 hours per day in a cell with no way of sitting up, some inmates developed back problems.  <u>Id.</u>  The court of appeals upheld the district court's total ban on double celling.  <u>Id.</u> at 1253.  However, the court noted that "double celling is not *per se* unconstitutional," so the prison system could seek to have the total ban on double celling modified once the system "eliminates the severe overcrowding . . . and the

10

pernicious evils that accompany it."  Id.

Petitioner contends that both the double cell he endured in segregation and the triple cells in general population violate the Eighth Amendment.  First, I note that petitioner does not appear to have ever been placed in a three-bed cell; however, he is seeking injunctive relief and it appears from the allegations that he is likely to be returned to a triple cell after he completes his reintegration program.

Neither the double segregation cells nor the triple cells at the Stanley Correctional Institution violate the Eighth Amendment.  Petitioner does not allege any deficiencies in food, medical care, sanitary conditions or safety that have resulted from the "overcrowding" at the institution.  It is true that the floor beds in the three-bed cells are allegedly 18 inches away from an open toilet, which could be a sanitation concern, and the third bed is placed on the floor and obstructs part of the doorway, which could be a health and safety concern. However, even together, these issues are not sufficient to create an environment that is "cruel and unusual punishment."  Nor is there reason to think the cells are so cramped that they endanger an inmate's health.  Unlike in French, where the inmates had approximately 12 square feet per person of usable living space, no chair and no way of even sitting up for as many as 23 hours in a day, the triple cells at the Stanley Correctional Institution allow each inmate approximately 18 square feet of "usable" living space (about the size of a standard single mattress) and include a chair.  Thus, even if inmates with a top bunk could

11

not sit up (which is unlikely but cannot be ruled out at the pleading stage), there is enough room in the cell to allow prisoners to move about some and sit in a chair instead of lying down constantly.

Nor do the double segregation cells raise Eighth Amendment concerns.  From the complaint, it is not clear whether the segregation cells are the same size as the double and triple cells.  At any rate, petitioner does not complain about the cell size, health or safety risk or sanitation problems related to the double segregation cell, but instead complains that the *other* inmate in the cell had to sleep on the floor in a plastic bed and that petitioner had neither the privacy expected in segregation nor the opportunity to congregate in groups that he would have in general population.  Nothing about petitioner's confinement in the double segregation cell reaches the level of "cruel and unusual punishment."

Because petitioner has not alleged facts suggesting that the double segregation and triple cells at the Stanley Correctional Institution create a health or safety risk, petitioner will be denied leave to proceed on his claim that the institution's double and triple celling violates his Eighth Amendment rights.

B.  <u>Due Process Claims</u>

Plaintiff contends that his due process rights were violated when he was ordered to be placed in a three-bed cell without a hearing and sent to segregation when he refused, and

later disciplined after an unfair hearing.  Although I have already concluded that petitioner's allegations fall short of suggesting that Stanley's three-bed cells violate the Eighth Amendment, that conclusion does not preclude a finding that placement in a three-bed cell deprives an inmate of a liberty interest.  As the Court of Appeals for the Seventh Circuit has acknowledged, there is a "small space" between the denial of life's necessities required for the Eighth Amendment and those sufficient to give rise to a liberty interest for the purpose of requiring due process.  Gillis v. Litscher, 468 F.3d 488, 492 (7th Cir. 2006) (citing Wagner v. Hanks, 128 F.3d 1173, 1174 (7th Cir. 1997)).

A procedural due process claim against government officials requires proof of inadequate procedures as well as interference with a liberty or property interest.  Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460 (1989).  In Sandin v. Conner, 515 U.S. 472, 483-84 (1995), the Supreme Court held that liberty interests "will be generally limited to freedom from restraint which . . . imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Under Sandin, due process is not implicated in the prison setting until there is a "substantial *incremental* deprivation" of liberty beyond those limitations considered ordinary incidents of prison life. Wagner, 128 F.3d at 1174 (emphasis in original).  After Sandin, protected liberty interests in the prison context are essentially limited to the loss of good time credits or placement for an indeterminate period of time in one of this country's "supermax"prisons.  E.g., Wilkinson

13

v. Austin, 545 U.S. 209 (2005).

Petitioner complains about the process related to two separate events:  placement in disciplinary segregation and threatened placement in three-bed cells.  I consider first petitioner's claim that the hearing he received before he was ordered to segregation was so flawed as to violate due process.  In the prison setting, placement in disciplinary segregation alone does not raise due process concerns.  When the action a plaintiff challenges is solely his "confinement in disciplinary segregation for a period that does not exceed the remaining term of the prisoner's incarceration," the court of appeals has stated that "it is difficult to see how after Sandin it can be made the basis of a suit complaining about a deprivation of liberty."  Wagner v. Hanks, 128 F.3d 1173, 1176 (7th Cir. 1997).  This is because due process is implicated only for treatment that is "atypical and significant" in relation to "ordinary incidents of prison life."  Sandin, 515 U.S. at 483-84.  It is commonplace for prisoners to be placed in segregation for a number of reasons unrelated to discipline, making occasional segregation an "ordinary incident of prison life."  Wagner, 128 F.3d at 1176.  Regardless how one-sided or unfair petitioner's disciplinary hearing was, it did not violate petitioner's due process rights because petitioner had no liberty interest in staying out of segregation.  Under Sandin, placement in segregation is not an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 483-84; Holly v. Woolfolk, 415 F.3d 678 (7th Cir. 2005) ("being placed in segregation

14

is too trivial an incremental deprivation of a convicted prisoner's liberty to trigger the duty of due process").

Next, petitioner complains about the lack of process related to being ordered into a three-bed cell. The Supreme Court has considered the due process implications of being placed in a crowded cell, although in a somewhat different setting. In Bell v. Wolfish, 441 U.S. 520, 542 (1979), the Supreme Court considered whether double celling was punishment for the purpose of assessing the due process rights of a pretrial detainee. The court held that there is no "'one man, one cell' principle lurking in the Due Process Clause" and determined the constitutionality of the double celling by considering whether the close confinement caused "genuine privations and hardship over an extended period of time." Bell, 441 U.S. at 542. In light of both Sandin and Bell, a prisoner's move to a more crowded environment deprives a prisoner of his liberty interest only if the level of "privations and hardship" faced in the more crowded environment is "atypical and significant" or a "substantial increment" beyond the level of privations and hardship faced in ordinary prison life.

Moving from the double cells of general population to selected triple cells does not meet these requirements. Prisoners in the general population at the Stanley Correctional Institution already face substantial privations and hardship by sharing a cell with another inmate for most of the day. Adding a third inmate into a crowded cell means even less

15

privacy and space.  Moreover, for the unfortunate third person, the move means sleeping on a plastic bed on the floor as opposed to a bunk bed.  However, none of these things amount to a change that is both "atypical and significant" or a "substantial increment" beyond double cells.

Because there is no liberty interest in petitioner's avoiding disciplinary segregation or being moved from a two-bed cell to a three-bed cell at the Stanley Correctional Institution, petitioner will be denied leave to proceed on his claim that his placement in segregation after a one-sided hearing or the threat of being placed in a three-bed cell without a hearing violates his due process rights.

## C.  Retaliation Claims

Next, petitioner contends that respondents placed a second inmate in petitioner's segregation cell in retaliation for petitioner's refusal to be placed in a three-bed cell.

"An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution."  DeWalt v. Carter, 224 F.3d 607, 618 (7th Cir. 2000).  A petitioner must plead three elements in order to state a claim for retaliation: he must "specify a retaliatory action"; he must name the appropriate respondents; and he must "assert[] a constitutionally protected activity, the exercise of which caused the . . . retaliatory action."  Hoskins v. Lenear, 395 F.3d 372, 375 (7th Cir. 2005).  This specificity is required

16

to put respondents on notice sufficient to enable them to file an answer.

Petitioner specifies retaliatory actions:  he was placed in temporary lock up and segregation.  In addition, petitioner identifies several respondents who were involved in his placement in segregation.  However, he fails to assert a constitutionally protected activity as the cause of the retaliatory action.  Petitioner contends that he was punished for refusing to be placed in a three-bed cell.  Although petitioner undeniably has a right to file grievances, Hoskins, 395 F.3d at 375, this right does not encompass a right to disobey prison officials' orders.  It is possible to infer from the proposed complaint that petitioner was punished for expressing his discontent with being placed in a three-bed cell, but an expression of discontent would not be protected; a prisoner's statements are not protected unless they relate to matters of "public concern."  McElroy v. Lopac, 403 F.3d 855, 859 (7th Cir. 2005). Petitioner's displeasure at being placed in a three-bed cell was nothing more than a personal gripe.  Because petitioner was not engaged in protected activity when he refused to be placed in a three-bed cell, he will be denied leave to proceed on his claim that respondents retaliated against him by punishing him for this refusal.


D.  Equal Protection

Petitioner contends that the triple celling policy at the Stanley Correctional Institution and petitioner's placement in segregation violated his Fourteenth Amendment

17

right to equal protection under the law.  Although it is not clear what petitioner's theory is, he does assert in an introduction to the complaint that respondents "perpetrated acts of discrimination against plaintiff," and it is clear from the allegations that not everyone was ordered to be placed in a three-bed cell.  I understand petitioner to be alleging that his right to equal protection under the law was violated because he was ordered to be placed in a three-bed cell, and subsequently punished for refusing to do so, while other prisoners were not.

The equal protection clause does not require the government to treat everyone exactly the same regardless of the circumstances.  Normally, different treatment is permissible so long as there is a rational basis for it.  City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 440 (1985); see also May v. Sheahan, 226 F.3d 876, 882 (7th Cir. 2000) ("In the prison context, the Equal Protection Clause of the Fourteenth Amendment requires inmates to be treated equally, unless unequal treatment bears a rational relation to a legitimate penal interest.")  In limited situations, heightened scrutiny is required, such as when the government discriminates on the basis of race, Johnson v. California, 543 U.S. 499 (2005), but plaintiff does not suggest that defendant is treating him differently for a reason that would require more than a rational basis to survive constitutional scrutiny.

Under Fed. R. Civ. P. 8, a plaintiff does not need to prove his claim in his complaint but he does need to provide "a short and plain statement of the claim showing that [he] is

18

entitled to relief."  In the context of an equal protection claim  governed by rational basis review, this means that "a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications." St. John's United Church of Christ v. City of Chicago, 502 F.3d 616, 639 (7th Cir. 2007) (quoting Wroblewski v. City of Washburn, 965 F.2d 452, 460 (7th Cir. 1992)).

Plaintiff does not meet this standard.  Indeed, petitioner's allegations provide the rational basis for why some prisoners were required to be placed in three-bed cells—the institution had to renovate to comply with federal and state code.  Although it is not clear how prison officials decided who would be placed in three-bed cells, there is no suggestion in petitioner's complaint that they used improper criteria to make that decision.  Likewise, the rational basis for respondents' decision to punish petitioner by placing him in segregation for disobeying an order is apparent.  The allegations do not suggest that others who disobeyed were not punished.

Because plaintiff has not overcome the presumption of rationality to which defendant is entitled, petitioner will be denied leave to proceed on his claim that respondents violated his right to equal protection under the law by ordering him to be placed in a three-bed cell while others were not required to triple bunk and punished for disobeying this order.

19

E.  <u>Additional Claims</u>

Finally, petitioner asserts, in a single sentence in an introductory paragraph to his proposed complaint, that respondents' acts are in violation of "federal statutes §§ 241 and 242, and State law."  From this brief statement, respondents would have no notice of what "federal statutes" or "state law" petitioner believes respondents are violating.  Petitioner will be denied leave to proceed on these claims because his allegations fail to comply with Fed. R. Civ. P. 8.

I note that this will be the third lawsuit petitioner has filed in which one or more claims have been dismissed on the grounds that they are legally meritless or fail to state a claim on which relief may be granted.  28 U.S.C. § 1915(e)(2).  In orders dated July 23, 2003 and February 24, 2004, I dismissed one or more of petitioner's claims in Cases Nos. 03-C- 323-C and 04-C-23-C as legally meritless or failing to state a claim upon which relief can be granted.  Under <u>George v. Smith</u>, 507 F.3d 605 (7th Cir. 2007), a strike is counted for the purpose of barring prisoners from seeking pauper status under 28 U.S.C. § 1915(g) for any case in which *any* claim is dismissed as legally meritless or failing to state a claim upon which relief may be granted.  Petitioner is receiving his third "strike" for filing this lawsuit and may not seek pauper status in any future civil action or appeal "unless [he] is under imminent danger of serious physical injury." 28 U.S.C.  1915(g).

20

ORDER

IT IS ORDERED that

1.  Petitioner Douglas K. Uhde's request for leave to proceed in forma pauperis on his claims that respondents Pam Wallace, Thomas Karlen, Matthew Franks, Rick Raemisch, S. Salter, Ken Milbeck, Cheryl Webster, Robin Boyd, Jerry Sweeny, Patrick Lynch, M. Kasten, Semanko, Matthew Gerber, Tom Gozinske, Anderson, Dorf, Kaczmarek, Seichter, Krum, Cicha and Tempshi violated his Eight Amendment rights by requiring him to be double celled in segregation and threatened to violate his Eighth Amendment rights by requiring him to be triple celled is DENIED for his failure to state a claim upon which relief may be granted.

2.  Petitioner's request for leave to proceed in forma pauperis on his claims that respondents violated his due process rights by ordering him to be placed in a three-bed cell without a hearing and punished for disobeying the order after an unfair hearing is DENIED for his failure to state a claim upon which relief may be granted.

3.  Petitioner's request for leave to proceed in forma pauperis on his claims that respondents retaliated against him for refusing to be placed in a three-bed cell is DENIED for his failure to state a claim upon which relief may be granted.

4.  Petitioner's request for leave to proceed in forma pauperis on his claims that respondents violated his rights to equal protection under the law by ordering that he be

21

placed in a three-bed cell while not ordering other inmates to do the same is DENIED for his failure to state a claim upon which relief may be granted.

5.  Petitioner's request for leave to proceed in forma pauperis on his claims that respondents violated "federal statutes §§ 241 and 242, and State law" is DENIED for his failure to state a claim upon which relief may be granted.

6.  This case is DISMISSED with prejudice for petitioner's failure to state a claim upon which relief may be granted.

7. The unpaid balance of petitioner's filing fee is $347.89; this amount is to be paid in monthly payments according to 28 U.S.C. § 1915(b)(2).

8.  A strike will be recorded against petitioner pursuant to § 1915(g):  this is petitioner's third strike.

9. The clerk of court is directed to close the file.

Entered this 26th day of March, 2008.

BY THE COURT:

/s/

_____

BARBARA B. CRABB
District Judge

22